UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,              Case No. 1:21-cr-20155

v.                                                    Honorable Thomas L. Ludington
                                                         United States District Judge

CHRISTOPHER MICHAEL KACZMAREK,

              Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR ARMED CAREER CRIMINAL ACT DETERMINATION**

This matter is before this Court upon Defendant's Motion for an Armed Career Criminal Act Determination.[1] ECF No. 30. Defendant requests a judicial determination that two of his prior convictions cannot serve as predicate "violent felonies" for purposes of 18 U.S.C. § 924(e)(1). *Id*. For the reasons stated hereafter, Defendant's Motion will be denied.

**I.**

At the center of Defendant's Motion is the Armed Career Criminal Act of 1984 (ACCA), 18 U.S.C. § 924(e). The ACCA imposes a 15-year minimum sentence for unlawfully possessing a firearm after at least three other convictions for a "violent felony" or "serious drug offense." 18 U.S.C. § 924(e)(1). The Guidelines refer to this group of offenders as "armed career criminals." *See* U.S. SENT'G GUIDELINES MANUAL (USSG) § 4B1.4(a).

In February 2021, Defendant Christopher Michael Kaczmarek was indicted on one count of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1).[2] ECF No. 1. Given Defendant's

---

[1] Defendant's Motion is entitled "Motion to Determine That Two Relevant Michigan Convictions Are Not Crimes of Violence or Violent Felonies." ECF No. 30.
[2] In October 2021, the Government filed a superseding indictment, adding three additional firearm-related counts. ECF No. 25.

prior convictions, the parties stipulated to an order directing the Probation Department to conduct a pre-plea investigation regarding the ACCA. ECF No. 23 at PageID.58 (calling the information "critical for plea negotiations").

Through its investigation, the Probation Department found that Defendant qualified as an armed career criminal based on three prior convictions: (1) assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84; (2) felonious assault, *id.* § 750.82; and (3) making a terrorist threat/making a false report of terrorism, *id.* § 750.543m(1)(a). ECF No. 29 at PageID.91 (filed under seal).

Shortly after the Probation Department filed its report, Defendant filed the instant motion for an ACCA determination. Defendant argues that his convictions for felonious assault and making a terrorist threat/making a false report of terrorism cannot serve as a predicate "violent felony" under the ACCA. ECF No. 30. The Government has since responded in opposition. ECF No. 31. Defendant has not replied.

## II.

The ACCA defines "violent felony" as any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B). This definition is commonly referred to as the "elements clause."[3] *See, e.g.*, *United States v. Burris*, 912 F.3d 386, 392 (6th Cir.), *cert. denied*, 140 S. Ct. 90 (2019). To determine

---

[3] The Guidelines use the same elements clause for the term "crime of violence," which is used in scoring the guideline range for certain offenders. *See* USSG § 4B1.2(a) (defining "crime of violence" as any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another"); *see also* USSG § 4B1.4(b)–(c) (modifying base offense level and criminal history category for armed career criminals who possessed the underlying firearm or ammunition in connection with a crime of violence). The Sixth Circuit applies the modified categorical approach for both terms. *See United States v. Bartee*, 529 F.3d 357, 363 (6th Cir. 2008) ("[A] violent felony under the ACCA and a crime of violence under the Guidelines share essentially the same definitions." (internal quotation marks omitted)).

whether a state conviction falls within the "elements clause," federal courts must apply the "categorical approach." *Id.* (citing *Descamps v. United States*, 570 U.S. 254, 260 (2013)). "The categorical approach prohibits federal sentencing courts from looking at the particular facts of the defendant's previous state or federal felony convictions; rather, federal sentencing courts may look only to the statutory definitions—i.e., the elements—of a defendant's prior offenses." *Id.* (internal quotation marks omitted). Therefore, the question is whether "every defendant convicted of [the offense at issue] *must have* used, attempted to use, or threatened to use physical force against the person of another *in order to have been convicted*." *Id.* (emphasis in original). If the answer is "no," then the prior conviction is not a predicate "violent felony." *Id.* In this way, the categorical approach is an "overbreadth analysis" in which the basic question is whether the statute "criminalizes *more* conduct than is described in the . . . elements clause[]." *Id.* (emphasis added).

A slightly different rule applies when the criminal statute at issue is "divisible"—that is, when the statute "set[s] out one or more elements of the offense in the alternative, thereby defining multiple crimes." *Id.* at 393 (cleaned up). When the statute is divisible, the court must apply the "modified categorical approach," which allows the court "to consult a limited class of documents . . . to determine which alternative formed the basis of the defendant's prior conviction." *Id.* "This limited class of documents—so-called *Shepard* documents—includes the indictment, jury instructions, or plea agreement and colloquy." *Id.* (internal quotation marks omitted). After determining the relevant elements, the court must apply the categorical approach. *Id.*

### III.

Defendant first challenges the use of his 2002 conviction for felonious assault. Michigan's felonious-assault statute provides:

> [A] person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit

murder or to inflict great bodily harm less than murder is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $2,000.00, or both.

M.C.L. § 750.82(1). According to the Michigan Supreme Court, felonious assault has three elements: "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v. Jackson*, 790 N.W.2d 340, 343 (Mich. 2010).

**A.**

As both parties acknowledge, the Sixth Circuit already decided that § 750.82 qualifies as a "violent felony" because "there is no way to [violate § 750.82] without intentionally attempting or threatening physical force against another person with a dangerous weapon."[4] *See United States v. Harris*, 853 F.3d 318, 321 (6th Cir. 2017). Yet Defendant contends that *Harris* is inapplicable given the Supreme Court's recent decision in *Borden v. United States*, 141 S. Ct. 1817 (2021). In *Borden*, the Court held that Tennessee's felonious-assault statute was not a "violent felony" because it criminalized conduct that was merely reckless. *Id.* at 1825. The Court reasoned that the phrase "against another," which appears in the elements clause, "demands that the perpetrator direct his action at, or target, another individual." *Id.* Therefore, to qualify as a "violent felony" under the ACCA, an offense must contain a "purposeful" or "knowing" mens rea; statutes that criminalize recklessness or negligence—like Tennessee's felonious-assault statute—are overbroad. *Id.*

Defendant argues that § 750.82 must be revisited in light of *Borden* because *Harris* did not address "the least culpable intent Michigan allows for a [felonious-assault] conviction." ECF No.

---

[4] Technically, *Harris* addressed whether § 750.82 qualifies as a "crime of violence" under the Guidelines. *See Harris*, 853 F.3d at 320. But as indicated, the Sixth Circuit applies the same analysis for "violent felony" as for "crime of violence." *See* note 3, *supra*.

30 at PageID.95. Not so. In concluding that § 750.82 qualifies as a "crime of violence," the Sixth Circuit specifically found that § 750.82 requires purposefulness. *See Harris*, 853 F.3d at 321 ("[T]here is no way to commit [felonious assault in Michigan] without *intentionally* attempting or threatening physical force against another person with a dangerous weapon." (emphasis added)). In other words, the Sixth Circuit *did* address the least culpable intent allowable under § 750.82. The mere fact that *Harris* was decided before *Borden* does not allow this Court to disregard it.

Further, even if *Borden* required this Court to reconsider § 750.82, the result would be the same. Section 750.82 requires an "assault," which the Michigan Supreme Court defines as "either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v. Starks*, 701 N.W.2d 136, 140 (Mich. 2005). Battery, in turn, is defined as "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id.* Accordingly, Michigan courts have long held that "felonious assault is a specific intent crime," requiring "either an intent to injure or an intent to put [the] victim in reasonable fear or apprehension of an immediate battery." *People v. Polk*, 333 N.W.2d 499, 500–01 (Mich. Ct. App. 1982) (citing *People v. Johnson*, 284 N.W.2d 718 (Mich. 1979)). Therefore, every defendant convicted of felonious assault in Michigan "*must have* used, attempted to use, or threatened to use physical force against the person of another," and must have done so purposefully. *See Burris*, 912 F.3d at 392 (emphasis in original).

**B.**

Defendant next argues that Michigan's felonious-assault statute is not a "violent felony" because it criminalizes less serious conduct than the Tennessee statute in *Borden*. ECF No. 30 at PageID.97. A conviction under the Tennessee statute, he notes, "requires a serious injury," while § 750.82 requires no injury. *Id.* Therefore, "if the Tennessee statute requiring at least a reckless

mens rea to do a physical harm does not make the *Borden* standard . . . , then [Michigan's statute][,] which does not require any intent to do physical harm[,] also cannot." *Id.*

Defendant is mistaken. The test is not whether the statute is sufficiently "serious" but whether "every defendant convicted [under that statute] *must have* used, attempted to use, or threatened to use physical force against the person of another." *See Burris*, 912 F.3d at 392 (emphasis in original). The Supreme Court held that the Tennessee statute did not meet the "against" element—and was therefore overbroad—because it criminalized mere recklessness. *See Borden*, 414 S.Ct. at 1825. The abstract "seriousness" of the statute was irrelevant.

## C.

Defendant also argues that § 750.82 is not a "violent felony" because the Sixth Circuit recently held that it does not constitute a "crime involving moral turpitude" (CIMT). ECF No. 30 at PageID.99–100 (citing *Hernandez v. Whitaker*, 914 F.3d 430, 432 (6th Cir. 2019)). In *Hernandez*, Immigration Customs and Enforcement ("ICE") initiated removal proceedings against a special immigrant juvenile who pleaded guilty to violating § 750.82. *Hernandez*, 914 F.3d at 432. ICE argued, and the immigration judge agreed, that § 750.82 qualified as a CIMT. *Id.* at 432–33. On appeal, the Sixth Circuit held that § 750.82 was too broad to be a CIMT because it criminalized the mere "intent to place the victim in apprehension of an immediate battery." *Id.* at 434. As the Sixth Circuit has explained, "[t]he apprehension variety of assault is less morally turpitudinous than the attempted-battery variety, as it requires no intention to physically harm another person." *Hanna v. Holder*, 740 F.3d 379, 390 (6th Cir. 2014) (quoting *Singh v. Holder*, 321 F. App'x 473, 479–80 (6th Cir. 2009)).

Defendant reasons that "[i]f [§ 750.82] could not reach the CIMT standard[], then . . . [it] certainly cannot reach the higher standard[] required by [*Borden*]." ECF No. 30 at PageID.100. Defendant's argument is unpersuasive for three reasons.

First, as the Government notes, Defendant is mixing apples and oranges. ECF No. 31 at PageID.118. The term "crime involving moral turpitude" not used in the ACCA and has no direct relationship with the term "violent felony." Instead, CIMT appears in the Immigration and Nationality Act of 1954 and governs certain removal proceedings. *See* 8 U.S.C. § 1227(a)(2)(A)(i)(I) ("Any alien who is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission . . . is deportable."). And unlike "violent felony," CIMT is defined only by case law—and only in a rather ambiguous manner. *See Reyes v. Lynch*, 835 F.3d 556, 560 (6th Cir. 2016) (defining a CIMT as an offense that "necessarily entails conduct on the part of the offender that is inherently base, vile, or depraved, and contrary to accepted rules of morality and the duties owed between persons or to society in general."); *see also Yeremin v. Holder*, 738 F.3d 708, 714 (6th Cir. 2013) ("Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind.").

Second, the "moral turpitudinous" of an offense is irrelevant to the categorical approach. Many CIMTs could not qualify as violent felonies. *See Yeremin v. Holder*, 738 F.3d 708, 714 (6th Cir. 2013) ("Crimes that involve deception or fraud consistently are held to qualify as crimes involving moral turpitude."). *Hernandez*'s characterization of felonious assault has no bearing on whether the offense satisfies the elements clause.

Finally, *Hernandez* does not overrule, criticize, or even discuss *Harris*; indeed, *Hernandez* only casually cites *Harris* to note that § 750.82 is indivisible. *See Hernandez*, 914 F.3d at 435 ("[B]oth parties agree that [§ 750.82] is not divisible." (citing *Harris*, 853 F.3d at 320)).

Accordingly, Defendant's suggestion that *Hernandez* overruled *Harris sub silentio* must be rejected.

For the foregoing reasons, this Court finds that Defendant's 2002 conviction for felonious assault can serve as a predicate "violent felony" under the ACCA.

### IV.

Defendant next challenges the use of his 2016 conviction for making a terrorist threat/making a false report of terrorism. The relevant statute provides:

> (1) A person is guilty of making a terrorist threat or of making a false report of terrorism if the person does either of the following:
> (a) Threatens to commit an act of terrorism and communicates the threat to any other person.
> (b) Knowingly makes a false report of an act of terrorism and communicates the false report to any other person, knowing the report is false.
> (2) It is not a defense to a prosecution under this section that the defendant did not have the intent or capability of committing the act of terrorism.
> (3) A person who violates this section is guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $20,000.00, or both.

MICH. COMP. LAWS § 750.543m.

### A.

Whether § 750.543m is a "violent felony" under the ACCA appears to be a matter of first impression. Because § 750.543m is alternatively phrased, the first step of the analysis is to determine whether the statute is divisible—that is, whether the alternative phrasing sets forth either "multiple alternative sets of *elements*," or "multiple alternative factual *means* of committing a single element." *See Burris*, 912 F.3d 386, 393 (6th Cir.) (emphasis in original), *cert. denied*, 140 S. Ct. 90 (2019).

In *Mathis v. United States*, the Supreme Court identified three ways to determine whether a statute is divisible. 136 S.Ct. 2243, 2256–57 (2016); *see also Burris*, 912 F.3d at 403–05

(discussing "three ways" for "determining whether a statute is divisible"). The first way is to consult the relevant state-court decisions. *Mathis*, 136 S.Ct. at 2256. Unfortunately, this method is unhelpful here. The Michigan Supreme Court has addressed § 750.543m only once and in the context of an unrelated sentencing enhancement. *See People v. Osantowski*, 748 N.W.2d 799, 803 (Mich. 2008) (holding that a 100-point enhancement under Michigan Compiled Laws § 777.49a(1)(a) was inappropriate because defendant did not "commit" an act of terror). Similarly, the Michigan Court of Appeals has addressed § 750.543m on various occasions but has never addressed its divisibility.

The second way is to determine whether "[the] statutory alternatives carry different punishments." *Mathis*, 136 S.Ct. at 2256 (noting that "[i]f statutory alternatives carry different punishments, then under [*Apprendi v. New Jersey*, 530 U.S. 466 (2000))] they must be elements"). This method also proves unhelpful. Section 750.543m does not provide for separate penalties; it simply states that offenders are "guilty of a felony punishable by imprisonment for not more than 20 years or a fine of not more than $20,000.00, or both." M.C.L. § 750.543m(3). Although the lack of separate penalties weighs against divisibility, it is not dispositive here.

The third and most obvious way—reviewing the statutory language "on its face"—proves dispositive. *See Mathis*, 136 S.Ct. at 2256. Section § 750.543m(1)'s disjunctive use of "either" and "or" suggests the creation of two different offenses: (1) making a terrorist threat and (2) making a false report of terrorism. *See* M.C.L. § 750.543m(1) ("A person is guilty of making a terrorist threat *or* of making a false report of terrorism if the person does *either* of the following . . . ."). Further, the two Subsections—(1)(a) and (1)(b)—provide separate elements, which Michigan recognizes with separate offense-specific jury instructions. *See United States v. Ritchey*, 840 F.3d 310, 320 (6th Cir. 2016) (looking to Michigan model jury instructions to determine divisibility).

*Compare* MICH. MODEL CRIM. JURY INSTRUCTIONS § 38.4 (2021) (making a terrorist threat), *with* MICH. MODEL CRIM. JURY INSTRUCTIONS § 38.4a (2021) (making a false report of terrorism). Accordingly, the only logical conclusion is that Subsections (1)(a) and (1)(b) describe different crimes with different elements, not "multiple alternative factual means of committing a single element." *Burris*, 912 F.3d at 392.

**B.**

Having determined that § 750.543m is divisible, the next step is to determine whether Defendant was convicted for making a terrorist threat or for making a false report of terrorism. *Id.* at 393. As indicated, this inquiry turns on the so-called *Shepard* documents. *See id.* (instructing courts to examine the indictment and other documents). Here, the only available *Shepard* documents—the charging information and judgment of conviction—indicate Defendant was convicted for making a terrorist threat under § 750.543m(1)(a). *See* ECF No. 31-4 at PageID.138 (amended information charging Defendant under Count 1 with "threaten[ing] to commit an act of terrorism" and "communicat[ing] that threat to another person"); *id* at PageID.139 (judgment indicating conviction for Count 1).

**C.**

The final step of the analysis is to apply the categorical approach—that is, whether every Defendant convicted of making a terrorist threat in Michigan "*must have* used, attempted to use, or threatened to use physical force against the person of another." *See Burris*, 912 F.3d at 392 (emphasis in original).

**i.**

Section 750.543m(1)(a) has two basic elements: "(1) threaten[ing] to commit an act of terrorism, and (2) communicat[ing] the threat to another person." *People v. Byczek*, No. 350341,

2021 WL 1822804, at *5 (Mich. Ct. App. May 6, 2021) (citing M.C.L. § 750.543m(1)(a)); *see also* MICH. MODEL CRIM. JURY INSTRUCTIONS § 38.4 (2021) ("First, that the defendant communicated with [*identify recipient(s) of the communication*] by speech, writing, gestures, or conduct . . . Second, that during the course of the communication, the defendant threatened to commit an act of terrorism . . . ." (emphasis in original)).

Section 750.543b(a) defines an "act of terrorism" as:

[A] willful and deliberate act that is all of the following:

(i) An act that would be *a violent felony* under the laws of this state, whether or not committed in this state.
(ii) An act that the person knows or has reason to know is dangerous to human life.
(iii) An act that is intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion.

M.C.L. § 750.543b(a) (emphasis added). Given that an act of terrorism requires a "violent felony," one might be forgiven for thinking that an act of terrorism clearly requires the "use, attempted use, or threatened use of physical force." 18 U.S.C. § 924(e)(2)(B). But the statute's peculiar definition of "violent felony" makes this a close case.

Section 750.653b defines "violent felony" as:

[A] felony in which an element is the use, attempted use, or threatened use of physical force against an individual, *or* the use, attempted use, or threatened use of a harmful biological substance, a harmful biological device, a harmful chemical substance, a harmful chemical device, a harmful radioactive substance, a harmful radioactive device, an explosive device, or an incendiary device.

M.C.L. § 750.543b(h) (emphasis added). The disjunctive "or" between the physical-force clause and the harmful-device clause suggests that a person could threaten a violent felony—and therefore an act of terrorism—without threatening the use of physical force against an individual. Indeed, the statute defines some of the enumerated substances and devices in a manner that does *not* require the use, attempted use, or threatened use of physical force against an individual. *See, e.g.*, *id.* §

750.200h(g) (defining "harmful biological substance" as "a bacteria, virus, or other microorganism or a toxic substance derived from or produced by an organism that can be used to cause death, injury, or disease in humans, animals, or plants.").

The Government acknowledges this point but maintains that § 750.82 qualifies as a violent felony because of the "dangerous to human life" element. *See* M.C.L. § 750.543b(h) (defining "act of terrorism" to include "[a]n act that the person knows or has reason to know is dangerous to human life."); ECF No. 31 at PageID.124. The statute defines "dangerous to human life" as "that which causes a substantial likelihood of death or serious injury or that is a [certain kidnapping offense]." M.C.L. § 750.543b(b). According to the Government, then, "[a] mere threat to commit property damage *without* any danger or threat to human life does not fall within the scope of the statute." ECF No. 31 at PageID.124 n.4 (emphasis in original).

The problem with this interpretation is that it seems to create an inconsistency in the statute. *Cf. Ford Motor Co. v. United States*, 768 F.3d 580, 587 (6th Cir. 2014) ("We must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." (internal quotation marks omitted)). If the dangerous-to-human-life element requires the use, attempted use, or threatened use of physical force against an individual, then why would the Michigan legislature draft the violent felony element so that it could be satisfied by threatening *either* "[the] use of physical force against an individual" or the use of an enumerated substance or device?

Neither party explores this question, and this Court is reluctant to embark on an uninvited exploration of state law—especially when, as here, doing so would prove superfluous. Even if § 750.543m(1)(a) theoretically allows for a conviction based on a threat to property, Defendant must

demonstrate "a realistic probability, not a theoretical possibility, that [Michigan] would apply its statute" in the manner suggested. *See Burris*, 912 F.3d at 398; *see also Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) ("[O]ur focus on the minimum conduct criminalized by the state statute is not an invitation to apply legal imagination to the state offense." (internal quotation marks omitted)). He has not even attempted to do so here. And in reviewing the relevant case law, this Court is unconvinced that he could ever do so.

The Sixth Circuit's decision in *Burris* provides a useful contrast. In *Burris*, the defendant argued that Ohio's felonious-assault and aggravated-assault statutes did not qualify as violent felonies under the ACCA because they criminalized the infliction of "serious mental harm." *Id.* at 395. His central premise was correct. As the Sixth Circuit acknowledged, "a person [could] at least theoretically knowingly cause certain serious mental harms without using, attempting to use, or threatening to use physical force against the person of another." *Id.* at 397. The question then became whether "there [was] a realistic probability that Ohio would apply its felonious-assault and aggravated-assault statutes to conduct that falls outside of the conduct described in the [elements clauses.]" *Id.* at 398. In the absence of precedent from the Ohio Supreme Court, the Sixth Circuit turned to state appellate decisions. *Id.* Three of those decisions involved convictions for felonious assault or aggravated assault without any alleged physical force, confirming that the statutes were overbroad. *Id.* at 398–99.

As in *Burris*, the statute here at least theoretically allows for a conviction without the use, attempted use, or threatened use of physical force against an individual. But unlike in *Burris*, there is no state caselaw here to transform that "theoretical possibility" into a "realistic probability." *Burris*, 912 F.3d at 398. Indeed, every Michigan case arising from a purported violation of § 750.543m(1)(a) involves some violent threat against an individual. *See, e.g.*, *People v. Gerhard*,

No. 354369, 2021 WL 2600819, at *1 (Mich. Ct. App. June 24, 2021) (threatening to take AR-15 rifle to campus and "make the snowflakes [liberal students] melt"); *People v. Byczek*, No. 350341, 2021 WL 1822804, at *1 (Mich. Ct. App. May 6, 2021) (threatening to reenact infamous Las Vegas shooting at workplace); *People v. Quigley*, No. 352617, 2021 WL 297609, at *1 (Mich. Ct. App. Jan. 28, 2021) (per curiam) (unpublished) (holding Mayor's secretary hostage and threatening to detonate bomb); *People v. Miars*, No. 347675, 2020 WL 3399573, at *1 (Mich. Ct. App. June 18, 2020) (per curiam) (unpublished) (writing threatening messages on jail cell wall about killing ex-girlfriend); *In re Gilbert*, No. 333297, 2017 WL 2821755, at *1 (Mich. Ct. App. June 29, 2017) (per curiam) (unpublished) (threatening "to bring a gun to school and kill certain classmates and then himself"); *People v. Seastrom*, No. 343909, 2019 WL 2517409, at *1 (Mich. Ct. App. June 18, 2019) (per curiam) (unpublished) (threatening to kill would-be coworkers "as [they] all walk[ed] out of work, just like . . . in [Las] Vegas"). Absent some state-law authority to the contrary, the possibility that § 750.543m(1)(a) would be applied to threats against property remains purely theoretical.

**ii.**

Defendant, for his part, essentially ignores *Mathis*, Sixth Circuit precedent, and the multi-step analysis applied here. Instead, he argues that § 750.543m(1)(a) does not qualify as a violent felony because "a person can be convicted . . . without any intent or mens rea or even the capability to physically hurt anybody." ECF No. 30 at PageID.103. Defendant relies on the Michigan Supreme Court's decision in *People v. Osantowski*, 748 N.W.2d 799 (Mich. 2008).

As indicated, *Osantwoski* presented a narrow sentencing issue unrelated to the ACCA: "[W]hether a score of 100 points is appropriate for offense variable 20 (OV 20), which addresses terrorism, when a defendant threatens to cause harm using certain substances or devices but his

threats, themselves, do not constitute acts of terrorism as defined by MCL 750.543b(a)." *Osantowski*, 748 N.W.2d at 799–800. The defendant in *Osantwoski* was convicted of making a terrorist threat after sending a series of emails to a teenage girl in Washington in which he "threat[ened] to commit 'mass murder' at his school." *Id.* at 800. At sentencing, the trial court refused to score a 100-point enhancement under OV 20, which applies when the "offender committed an act of terrorism by using or threatening to use [an enumerated substance or device]." *Id.* at 801 (quoting M.C.L. § 777.49a(1)(a)). The trial court reasoned that the emails *themselves* were not "acts of terrorism." *Id.* at 800–01. The Michigan Court of Appeals vacated the trial court's decision, but the Michigan Supreme Court reversed. *Id.* at 800.

The *Osantowski* court's reasoning was simple: The 100-point enhancement applied only if the offender "committed an act of terrorism." *Id.* at 801. But "not all threats are acts of terrorism, even if they qualify as violent felonies." *Id.* at 802. Indeed, to qualify as an act of terrorism, the threat must also be "dangerous to human life" and "intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion." *Id.* (quoting M.C.L. § 750.543b(a)). For that reason, the 100-point enhancement was inappropriate in *Osantowski*, because the defendant "[did] not 'know[] or ha[ve] reason to know' that his e-mail messages to another teenager were *themselves* 'dangerous to human life'" or prohibitively intended. *Id.* at 803 (quoting M.C.L. § 750.543b(a)).

Defendant's reliance on *Osantwoski* is misplaced. Contrary to Defendant's view, *Osantowski* does not suggest that a person can be convicted under § 750.543m(1)(a) "without any intent or mens rea"; it simply holds that a person can be convicted of *threatening* to commit an act of terror without thereby *committing* an act of terror. *Id.* at 802. To convict a person under § 750.543m(1)(a), the prosecution must still prove the "defendant's general intent to communicate

a 'true threat.'" *People v. Osantowski*, 736 N.W.2d 289, 299 (Mich. Ct. App. 2007), *rev'd in part on other grounds*, 748 N.W.2d 799 (Mich. 2008)); *People v. Byczek*, No. 350341, 2021 WL 1822804, at *4 (Mich. Ct. App. May 6, 2021).

### iii.

Defendant also notes that a person can be convicted under § 750.543m(1)(a) without having "the capability to physically hurt anybody." ECF No. 30 at PageID.103; *see* M.C.L. § 750.543m(2) ("It is not a defense to a prosecution under this section that the defendant did not have the intent or capability of committing the act of terrorism."). But Defendant has not shown why that matters. The question here is simply whether every defendant convicted under § 750.543m(1)(a) must have at least *threatened* the use of physical force against an individual. *See Burris*, 912 F.3d at 392. There is no reason to think that every offense with a force element must also have an ability element. On the contrary, in Michigan a person can be convicted of assault without the actual ability to commit battery. *See People v. Reeves*, 580 N.W.2d 433, 437 (1998) ("[A] lack of actual ability to inflict the threatened harm is largely irrelevant and unnecessary, as long as the victim reasonably apprehends an *imminent* battery."). The fact that every defendant convicted under § 750.543m(1)(a) must have at least threatened to use physical force against an individual is sufficient for ACCA purposes.

Accordingly, this Court finds that Defendant's 2016 conviction for making a terrorist threat can serve as a violent-felony predicate under the ACCA.

### V.

Accordingly, it is **ORDERED** that Defendant's Motion for Armed Career Criminal Act Determination, ECF No. 30, is **DENIED**. Consistent with the Probation Department's Report, ECF No. 29 (filed under seal), this Court finds that Defendant's 2016 conviction for making a

terrorist threat and 2002 conviction for felonious assault can both serve as violent-felony predicates under the ACCA.

Dated: November 22, 2021                    s/Thomas L. Ludington
                                                                                              THOMAS L. LUDINGTON
                                                                                              United States District Judge